Zenith Busch, Appellant, v. Roy Oliphant, Appellee.

Gen. No. 44,121.

Opinion filed November 3, 1947. Released for publication November 18, 1947.

JAMES PAUL DeLANEY, of Chicago, for appellant; LOUIS C. NETTELHORST, of Chicago, of counsel.

THOMAS M. MORRIS, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover damages for personal injuries claimed to have been sustained as a result of the wilful and wanton misconduct of defendant in driving his automobile in which plaintiff was an invited guest. At the close of plaintiff's case there was a directed verdict for defendant and plaintiff appeals.

Plaintiff's theory of the case is that she was an invited guest riding in a 1938 Plymouth automobile which was being driven by defendant south in Kimball avenue, Chicago, near the intersection of Avondale, an east and west street, and that defendant "wilfully and wantonly drove, operated, managed, controlled and maintained" the automobile so that it struck a parked car on the west side of Kimball avenue, as a result of which plaintiff was severely injured. The defendant's position is that since there was no evidence tending to support the charge of wilful and wanton misconduct, the court properly directed a verdict in his favor.

The accident happened shortly after midnight December 13, 1941, the action was brought May 18, 1942, but on account of the war the trial was not had until November 18, 1946.

Plaintiff testified that at the time of the accident she was employed at the West Suburban Hospital in Oak Park as a nurse or night superintendent on the

surgical floor; that she met defendant about two months prior to the accident when he was a patient at the hospital and had met him a few times afterward before the night in question; that "we had the date to go to the raffle of the bowling ball;" that defendant picked her up about 7:15 P.M. and George Corey was with him; that they drove directly to "Sid and Mike's Tavern." They left the tavern about 12 o'clock. That they all sat in the front seat, defendant in the driver's seat, the witness in the middle and Corey on the right. That she had been driving automobiles and had a license to do so since 1936, and had driven her father's car before she went into nurses training; that when they left the tavern they started home; that they were driving south on Kimball avenue and when they reached the intersection of Avondale street. the automobile was stopped for the red light; that when the light changed they started across the intersection and "When we got past, the motor started in to race and the car seemed to be gaining speed. Roy [defendant] leaned down from a driving position, keeping one arm on the steering wheel." That she leaned her head down to watch what Roy was doing and that is all she remembered. The car was going at a speed of between 30 and 40 miles an hour. That they got past the intersection where they had stopped, about a quarter to a half block. After the accident she was taken to the Belmont Hospital where she became conscious; that Roy was there and she asked him how it happened. He said they ran into the back of a car "because the accelerator had stuck." On cross-examination she testified: "Roy was a careful driver before, and up until the time the accident occurred. I had no reason to complain about his driving or about the condition of the car. We were all perfectly sober."

She further testified that on the evening and prior to the accident Roy had no trouble with the acceler-

ator. That she had ridden with him several times and had always regarded him as a careful driver.

Plaintiff called defendant under Section 60, of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. He testified that prior to December 13, 1941, he and plaintiff had two or three dates; that he was driving his father's car with his consent. That about 6:15 on the evening in question he drove to Zenith's home, picked her up and then drove to Corey's home and after picking him up they then drove back to Zenith's home and afterwards went to the tavern "to a raffle of a bowling ball, we all had tickets on it. We got there about 8 o'clock." That he had nothing to drink before picking Zenith up. That afterwards they had dinner and a few drinks, danced and waited for the raffle and left the tavern about 12 o'clock. That when he got to Avondale street he stopped for the red light and when it changed he started up, shifting from 2nd to 3rd. That "the gas pedal stuck. I went down to pick it up, and the pedal came up in my hand, and I went down to pick up the rod which stayed on the floor. George said, 'Look out for the parked car' and I hit the car. It was all smashed up and I took Zenith to the hospital." That "The accelerator was jammed. . . . From the time I bent down until the collision, took about 10 seconds." That he held his hand on the wheel when he went down. That he straightened up "when I thought I had loosened the pedal but I hadn't." That "Once before the pedal had stuck, about two weeks before, and I had reached down and pried it loose." That his father and others were with him at the time. "I had no trouble with it again. As far as I know it had not stuck before. My father told me to have it fixed." This was about two or three weeks before the accident but he did not have it fixed and drove it about 8 or 10 times, "Maybe more, maybe less" after that and before the accident. The gas

pedal did not stick on any of those occasions. That at the time of the accident "Everything happened so fast," I couldn't say how long it was. That the day after the accident he saw Zenith at the hospital and told her "I realized it was my fault. I said I would take care of anything for her."

George Corey, called by plaintiff, testified that on the evening in question, Roy picked him up at his home and they then drove to Zenith's home where they picked her up and then went to the tavern and left there about 12 o'clock. That he had quite often ridden with Roy; that they were driving down Kimball avenue and stopped for a red light at Avondale and after the light changed, started up and he heard the "motor racing. I turned around and Roy was fumbling with something on the floor. Zenith was looking down. I looked up and saw he was heading for a parked car. I yelled, he straightened up and tried to turn the car but it was too late. He was bent down about 10 seconds."

Par. 58a, Sec. 42–1, Ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.064(1)], provides that "No person riding in a motor vehicle as a guest, without payment for such ride, . . . shall have a cause of action for damages against the driver or operator of such motor vehicle . . . unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle."

■ The question for decision is whether there was sufficient evidence taken in the light most favorable to plaintiff, to take the case to the jury on the charge of wilful and wanton misconduct. We hold there was, and the court should not have directed a verdict for defendant. *Libby, McNeill & Libby v. Cook*, 222 Ill. 206; *Schneiderman v. Interstate Tr. Lines, Inc.*, 394 Ill. 569; *Walldren Express Co. v. Krug*, 291 Ill. 472; *Schoenbacher v. Kadetsky*, 290 Ill. App. 28.

In the *Schneiderman* case it was held that a wilful or wanton injury must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. And that the question whether personal injury had been inflicted by wilful and wanton misconduct, was a question of fact for the jury.

In the case at bar, the undisputed evidence is that defendant knew the defective condition of the accelerator about two or three weeks before the accident; that he had been told by his father to have it repaired. Plaintiff knew nothing about this defective condition. Moreover, just as the defendant drove the automobile across Avondale street the accelerator stuck and the car began to speed up. There were automobiles parked along the west side of Kimball avenue and in place of trying to reduce the speed or stop the car, he put his head down below the windshield where he could not see ahead. In these circumstances we think that the question as to whether defendant was guilty of wilful and wanton misconduct should have been submitted to the jury.

The judgment of the Superior court of Cook county is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

NIEMEYER, P. J., and FEINBERG, J., concur.