William Johnson, Administrator of Estate of Marian Johnson, Deceased, Plaintiff-Appellee, v. Chicago & North Western Railway Company, Defendant-Appellee, and Oliver E. Fraser, Administrator of Estate of Ethel E. Mullins, Deceased, Defendant-Appellant.

William Johnson, Administrator of Estate of Marian Johnson, Deceased, Plaintiff-Appellant, v. Chicago & North Western Railway Company, Defendant-Appellee, and Oliver E. Fraser, Administrator of Estate of Ethel E. Mullins, Deceased, Defendant-Appellant.

Gen. Nos. 10,863, 10,874.

Second District.

March 2, 1956.

Rehearing denied March 26, 1956.

Released for publication March 28, 1956.

Maynard & Maynard, of Rockford, for defendant-appellant; James F. Maynard, of Rockford, of counsel.

Sears and Streit, of Aurora, and John G. Boyle, of DeKalb, for William Johnson, plaintiff-appellee, and plaintiff-appellant; Edward F. Streit, of Aurora, and James M. Drake, of Chicago, of counsel.

Lowell B. Smith, of Sycamore, and Edward Warden, and John H. Gobel, of Chicago, for Chicago & North Western Railway Co., defendant-appellee; John H. Gobel, of Chicago, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

This is a suit brought by the administrator of the estate of Marian Johnson, a grandchild, age 8, against the estate of her grandmother, Ethel Mullins, age 67, and the Chicago & North Western Railway Company. Both suffered fatal injuries when Mrs. Mullins on the 15th day of December, 1951, drove an automobile in which Marian was riding past an operating wig-wag signal onto the Sixth Street Railroad crossing in DeKalb, Illinois, and in front of a clearly visible oncoming freight train.

Trial in the circuit court of DeKalb County, Illinois, resulted in jury verdicts of not guilty as to the North Western and a verdict of $11,500 against the defendant, Oliver E. Fraser, administrator of the estate of the grandmother. Subsequent motions were overruled and judgment was entered in favor of the plaintiff and against the defendant, Oliver E. Fraser, administrator as aforesaid, in the said sum of $11,500, and judgment was entered in favor of the North Western, and against the plaintiff.

The defendant-appellant, Oliver E. Fraser, administrator, took this appeal from the judgment entered against him in Case No. 10863. The plaintiff, William Johnson, administrator as aforesaid, took an appeal from the judgment against him and in favor of the North Western, that case being No. 10874 in this court. After the cases were docketed in this court, an order was entered directing that they be consolidated in the court for the purposes of hearings and oral argument, that only one set of the briefs and abstracts be required and that all filings in the consolidated cases be filed under the original appeal, namely No. 10863.

The original complaint filed on December 13, 1952, consisted of five Counts, to wit: Count I, a negligence Count against the defendant railroad; Count II, a

wilful and wanton Count against defendant Fraser, administrator, alleging plaintiff's intestate was a guest; Count III, a wilful and wanton Count against the defendant railroad; Count IV, a joint charge of negligence against the defendant railroad and wilful and wanton misconduct against defendant Fraser, administrator; Count V, a joint charge of wilful and wanton misconduct against both defendants. Answers were filed denying the allegations of the complaint.

On the date the case was called for trial, i. e., November 8, 1954, counsel for plaintiff upon motion was granted leave to file an amendment to said complaint consisting of two additional Counts, being Counts VI and VII. By Count VI it was alleged that plaintiff's intestate was a passenger and not a guest and that Ethel E. Mullins was guilty of negligence. By Count VII, it was alleged that plaintiff's intestate was a passenger and not a guest in the automobile of defendant's intestate and that both defendants, Ethel E. Mullins and the railroad, were guilty of joint negligence.

Upon the filing of said amendment to the complaint and the additional Counts VI and VII, defendant Fraser, administrator, asked and was granted leave to file a motion to strike Counts IV, VI and VII of said complaint on the grounds of surprise as to Counts VI and VII and that Count IV improperly joined a negligence charge against the railroad and a wilful and wanton charge against defendant Fraser, administrator, in a single Count, and as to Counts VI and VII, that it appeared from the face of the complaint that the plaintiff's intestate was, as a matter of law, a guest passenger in the automobile of defendant's intestate at the time of the occurrence in question and that under the Guest Act, no action by a guest against a driver could be brought except for the wilful and wanton misconduct of the driver, and that an allega-

343

tion of negligence against the driver was insufficient. The motion to strike was denied. Whereupon, defendant Fraser, administrator, after leave granted, filed a motion to require plaintiff to make additional Counts VI and VII more specific, to allege facts upon which it was plain that plaintiff's intestate was a passenger and not a guest in the automobile of Ethel E. Mullins, deceased. The court granted said motion.

Plaintiff thereupon filed a second amendment to the complaint being additional paragraphs 3a to additional Counts VI and VII in the words and figures, as follows:

"That at said time and place the plaintiff's intestate being a child eight years of age as aforesaid was under the custody and control of said Ethel E. Mullins and subject to her directions, that she became a passenger in said automobile of Ethel E. Mullins at the direction of said Ethel E. Mullins and was at the time and place of the occurrence in question a passenger in said automobile without payment for the ride, at the direction of the said Ethel E. Mullins; that plaintiff's intestate at the time and place of the occurrence in question owed to the said Ethel E. Mullins a duty of obedience and submission and by reason of the premises aforesaid was not a voluntary guest passenger in said automobile."

Upon the filing of said amendment defendant Fraser, administrator, after leave granted, filed a motion to strike the second amendment to the complaint on the ground that it appeared from the face of the complaint that the plaintiff's intestate was, as a matter of law, a guest passenger in the automobile of defendant's intestate, Ethel E. Mullins, and that the allegations of the second amendment to the complaint were wholly insufficient in law and in fact to sustain the position that plaintiff's intestate was not a guest passenger in said automobile at the time and place of

the occurrence in question. Said motion to strike the second amendment to the complaint was denied. Defendant Fraser, administrator, then obtained leave to file an answer to the amendment and second amendment to the complaint, and filed his answer denying the allegations of said amendments to the complaint. During the period of time that the amendments were made to the complaint, the court inquired of defense counsel:

"I don't hear any request for a continuance on the grounds of surprise, do I?"

and defense counsel answered:
"Mr. Gobel: Not on our part.
"Mr. Maynard: No."

At the trial, plaintiff withdrew the wilful and wanton Counts as to the defendant, Chicago & North Western Railway Company.

Defendant-appellant Fraser, administrator, contends that plaintiff's intestate was a guest in the automobile of Ethel E. Mullins, deceased, as a matter of law; that the trial court should have stricken the negligence Counts of the complaint against him as administrator; that the trial court should not have submitted the legal question of status of Marian Johnson, as passenger or guest, to the jury on undisputed evidence, as a matter of fact; that there was no sufficient evidence of wilful and wanton misconduct on the part of Ethel E. Mullins, deceased, to sustain a general verdict against her on the wilful and wanton Counts, and the court should have granted defendant Fraser's motion for judgment notwithstanding the verdict; that the trial court erroneously admitted incompetent testimony and gave erroneous instructions; and that the verdict is against the manifest weight of the evidence.

As to his appeal from the judgment in favor of defendant-appellee, the Chicago & North Western Rail-

way Company, plaintiff-administrator contends that he was restricted as to cross-examination, and as to rebuttal evidence, and that the trial court erred in giving certain instructions on behalf of the railway company.

The collision occurred on a Saturday afternoon at the Sixth street crossing in the City of DeKalb. This crossing is located in the downtown business district of DeKalb. At the Sixth street crossing there are two east-west main line running tracks and three industrial tracks or switching tracks north of the running tracks. There is a wig-wag flasher located on the south side of the tracks on the east side of Sixth street and immediately south of the running tracks. On the north side the flasher is located north of the most northerly of the industrial tracks and at least sixty or sixty-five feet north of the running tracks. There were no parked or standing freight cars on the industrial tracks nor on the running tracks, nor any other obstructions to prevent or hinder vision to the west. Fifty feet north of the main line tracks vision was unobstructed for one mile to the west; at seventy-five feet for a distance of 1700 feet to the west; at 100 feet for a distance of 1520 feet to the west, and at 150 feet for a distance of 340 feet to the west.

The day in question was a cold day—zero or below. It was variously described as partly cloudy, overcast, bright, clear, but all the witnesses agree that there was clear vision and it was not snowing at the time. It had been snowing heavily, however, and the entire area was covered with snow. Sixth street and the crossing was covered with snow packed from traffic and was slippery. Appellant Fraser's intestate, Mrs. Mullins, with plaintiff's intestate, Marian Johnson, riding with her as a passenger in the front seat, was proceeding south on Sixth street enroute to Mrs. Mullins' home. Mrs. Mullins was in good health, and had driven her car a lot. There was no evidence of

346

there ever having been any mechanical or other trouble with the car.

Mrs. Mullins was familiar with the crossing. She had lived in DeKalb for 5 or 6 years on the south side. The Johnsons lived northeast. They were about 10 blocks apart. Mrs. Mullins went back and forth between the two houses, and to do so, it was necessary to cross the tracks, and she had travelled over the Sixth street crossing and was familiar with it.

The train in question was a North Western Railroad Company freight train known as the Madam X, consisting of diesel units and eighty-four freight cars. It was travelling easterly. The engineer turned on the bell before the train reached the whistling post west of town and the bell was working all right and it continued to ring until the occurrence. The headlight on the locomotive was turned on and operating. The engineer whistled at the whistling post. He was whistling from the whistle post down to Third street, over Fourth street; and about halfway down to Sixth street, he gave some blasts of the horn. The engineer kept blowing the horn or whistle and set the brakes.

As the train approached the Sixth street crossing the fireman, Gross, observed the flashing signal on the north side operating when the engine was about 400 feet away from the crossing. The train then proceeded toward the crossing, and when it was about four car lengths or about 160 feet from the crossing, Gross observed the automobile. It was about twenty feet north of the wig-wag or flasher signal which was still operating. The car was proceeding in a southerly direction and it came across the three industrial tracks toward the running track. It did not seem to change its speed. It did not slow down. The automobile continued to come up to the crossing and it stopped with its front wheels in the middle of the tracks. It did not skid.

347

When the engineer first saw the automobile, it was just about at the wig-wag which was operating. He testified it looked like the automobile was going across ahead of the train; that she had plenty of time to do it, but she came up to where her front wheels were on a railing and stopped and didn't do anything after that, and stayed there and didn't move at all until the train hit it.

Hollis Randolph turned into Sixth street going north from the Lincoln Highway. The wig-wag signals were moving when he turned into Sixth street and continued to work while he approached the crossing. He pulled up and stopped south of the tracks. He saw the flasher working before he saw the car coming from the north. When he stopped he saw the car north of the tracks. The front of the train hit almost in the middle of the car. The little girl had been looking at the train. She jumped up or stood up on the seat. She looked like she was trying to jump over her grandma to get away. Even after the car stopped on the tracks there was time enough for a person to have gotten out.

Under the plaintiff's complaint and the amendments made thereto at the time of the trial, plaintiff on one theory sought recovery charging a violation of the guest statute which required proof of wilful and wanton misconduct before plaintiff would be entitled to recover; and on the other theory, that plaintiff's intestate was a non-gratuitous passenger, not a guest, and that there was a consideration for the ride, either by way of payment or arising out of the business relationship of the granddaughter and the grandmother. Defendant-appellant Fraser contends that there is insufficient evidence in the record to warrant the jury in finding Mrs. Mullins guilty because the grandmother owed no duty to the grandchild.

There is a dispute as to whether or not the evidence was sufficient to establish that the grandmother was

348

being paid for taking the grandchild in the car at the particular time of the collision, defendant Fraser contending that the trial court, over objection, permitted improper or incompetent evidence to go to the jury as to a payment for that particular purpose on the day in question. In the view we take of the case, it is not necessary to detail the evidence in that respect.

A resume of the evidence shows that the grandchild's parents, Dorothy and William Johnson, were both employed at Englander's in DeKalb and that Mrs. Mullins took care of the deceased Marian Johnson during the time the mother was employed; that Mrs. Mullins had worked for the Johnsons for "quite some time" or "for several months"; that she spent every day with Marian, and was paid every week. Her duties also included the transportation of Marian to and from school and between homes. Either Mrs. Johnson or Mrs. Mullins would take Marian over to the Mullins' residence. At school time, Mrs. Mullins would take Marian to school. After school the grandmother would go and get Marian and either take her back to her own home or take her to the Johnson home and stay with her, according to whatever arrangement had previously been made.

On the particular Saturday, both Mr. and Mrs. Johnson were working. Mrs. Lane, a daughter of Mrs. Mullins, came to DeKalb to visit her mother that day. She found her at Mrs. Johnson's with Marian. Mrs. Sanford, another daughter, came in from Earlville and went to her mother's home. Her mother wasn't there, so she went to Dorothy Johnson's home, and Mrs. Mullins was there taking care of Marian. Mrs. Mullins, Mrs. Sanford, Mrs. Lane and Marian went to Rochelle shopping, in Mrs. Sanford's car. Around 3:00 o'clock or shortly thereafter, they returned from the shopping trip to the Johnson residence. Because the Johnsons weren't home, Mrs. Mullins transferred

the packages from Mrs. Sanford's car to her own car and took Marian with her to her own home. It was on this trip that the fatal collision occurred.

Before the case was submitted to the jury, the court must have been of the opinion that there was sufficient evidence to sustain the wilful and wanton counts, otherwise the motions for directed verdict as to those counts would have been granted and those counts would have been stricken from the consideration of the jury. This is borne out by the following instructions which were submitted to the jury at the request of the said defendant-appellant, Fraser, as administrator:

I

"The Court instructs the Jury that the Plaintiff in this case cannot recover from the Defendant, Oliver E. Fraser, Administrator of the Estate of Ethel E. Mullins, Deceased, unless and until he proves by the greater weight or preponderance of the evidence the following propositions.

"First, that the Plaintiff's intestate, Marian Johnson, was at and immediately prior to the time and place of the occurrence in question free from any wilful and wanton misconduct on her part which proximately caused or contributed to cause her death; and

"Second, that the Defendant's intestate, Ethel E. Mullins, so wilfully and wantonly operated her automobile that as a direct and proximate result and consequence of the wilful and wanton misconduct of Defendant's intestate, Ethel E. Mullins, Deceased, the automobile operated by her collided with a train; and

"Third, that the wilful and wanton misconduct, if any, of the Defendant's intestate, Ethel E. Mullins, Deceased, was the proximate cause of the death of Plaintiff's intestate, Marian Johnson, Deceased.

"And if you find from the evidence that the Plaintiff has failed to prove any one or more of the foregoing

propositions by the greater weight or preponderance of the evidence, then in such case the Plaintiff cannot recover from the Defendant, Oliver E. Fraser, Administrator of the Estate of Ethel E. Mullins, Deceased."

## II

"The Court instructs the Jury as to the complaint against Oliver E. Fraser, Administrator of the Estate of Ethel E. Mullins, Deceased, that at the time of the occurrence in question the Statute of the State of Illinois provided among other things as follows:

'No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought.'

"In this regard the Court further instructs the Jury that a wilful act is an act done either with a deliberate intent to inflict injury upon another, or with an intentional disregard for the safety of the persons or property of others, and with an entire absence of care for the safety of the persons or property of others, such as would show a conscious indifference to consequences. To make an act wanton, the party doing the act or failing to act must be conscious of his conduct, and though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions that his conduct will naturally and probably result in injury to another.

351

"And in this case, if you find from the evidence, and under the instructions of the Court, that Plaintiffs intestate, Ethel E. Mullins, Deceased, was not guilty of wilful and wanton misconduct, as defined herein, then, you should find the Defendant, Oliver E. Fraser, Administrator of the Estate of Ethel E. Mullins, Deceased, not guilty."

While plaintiff complains of the giving of the two above instructions, he does not seek a reversal of the case as to defendant, Fraser.

As a consequence of these two instructions, recovery was limited by the court to a showing of wilful and wanton misconduct. These instructions removed the issues of negligence from the jury as effectively as if the court had directed a verdict. The jury found the defendant administrator guilty and we fail to see how said defendant is now in position to effectively challenge the correctness of the jury's finding.

On the state of the record hereinabove related, appellant Fraser's contention that the court should have directed a verdict in his favor falls far short of the requirements for the granting of such motion. There are many cases in Illinois announcing the doctrine that a railroad crossing is known to be a dangerous place and that drivers approaching same must exercise care commensurate with the danger. What difference does it make in this case whether Mrs. Mullins, being familiar with the crossing and the danger involved, failed to discover the presence of the train from any of the warnings given her, although the view was unobstructed, or, whether having discovered the presence of the train from the warnings furnished her, she chose to ignore them and proceed across the crossing, nevertheless. If the former is the situation, does she have the right to refuse to look when the train is in plain sight, to refuse to listen to all the sound signals being given her, or refuse to

352

observe the flasher? If it is the latter, does she have the right to ignore the warning signals and proceed across the crossing in the hope of beating the train? And having chosen to take the chance, will she now be permitted to plead that an error of judgment or a mishap in operation were not wilful because they were not intended? Appellant Fraser says that both ill will and intentional injury are unbelievable in view of the relationship existing between the grandmother and the grandchild. It is clearly established in Illinois that neither intentional injury nor actual ill will is a requirement for wilful and wanton misconduct. In Schoenbacher v. Kadetsky, 290 Ill. App. 28, the defendant's car skidded into an intersection where it collided with the plaintiff. The court said, p. 34:

"We think the question whether defendant was guilty of wanton misconduct was for the jury. Walldren Express Co. v. Krug, 291 Ill. 472; Price v. Bailey, 265 Ill. App. 358; Nosko v. O'Donnell, 260 Ill. App. 544. If the jury believed plaintiff's version of the collision, we think that defendant's conduct evidenced such a gross want of care and regard for the rights of others as to justify the presumption of wantonness.

"We think the evidence was wholly insufficient to show an intent or purpose by defendant to injure plaintiff, but an intent is not necessary under the law."

In Gaiennie v. Fringer, 5 Ill.App.2d 403, recently decided by this court, the plaintiff was a guest in defendant's car. Defendant stopped at a stop sign and then slowly entered an intersection and was struck by an automobile driven on a preferential highway. Defendant contended that there was no evidence of wilful and wanton misconduct because there was no evidence showing any consciousness on her part that her conduct would naturally and probably result in injury, nor was there a showing that any absence of

353

care on her part exhibited a conscious indifference to consequences. This court said, p. 412:

"An exact all-inclusive definition of wilfulness and wantonness is difficult to achieve."

Then the opinion quoted from Mower v. Williams, 402 Ill. 486, and from Bartolucci v. Falleti, 382 Ill. 168:

"To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, makes a case of constructive or legal wilfulness."

Appellant Fraser further argues that actual knowledge by Mrs. Mullins in this case is an essential element of proving wilful and wanton misconduct. In Stephens v. Weigel, 336 Ill. App. 36, this court said, p. 40:

"It is not necessary, however, that defendant intended that plaintiff should be injured by reason of his acts, nor is it necessary that defendant actually know the dangers to which plaintiff is exposed. It is sufficient if he has notice which would alert a reasonably prudent man, and he does not take reasonable precaution under the circumstances."

It is plaintiff's theory that, when facts were proved which would fairly permit the inference, the question of whether the death of Marian Johnson was caused by the wilful and wanton misconduct of Ethel E. Mullins was a question for the jury.

354

In Busch v. Oliphant, 332 Ill. App. 426, the court said, p. 430:

"The question for decision is whether there was sufficient evidence taken in the light most favorable to plaintiff, to take the case to the jury on the charge of wilful and wanton misconduct. We hold there was, and the court should not have directed a verdict for defendant. (Citing cases.)"

In Walldren Express & Van Co. v. Krug, 291 Ill. 472, the court said, p. 476:

"Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury."

This principle has often been followed by our courts. Libby, McNeill & Libby v. Cook, 222 Ill. 206; Levanti v. Dorris, 343 Ill. App. 355.

We are of the opinion that the trial court did not err in refusing to direct a verdict of not guilty for the defendant-appellant Fraser and that the lower court did not err in refusing to grant said defendant's motion for judgment notwithstanding the verdict and we are further of the opinion that the verdict is not against the manifest weight of the evidence, but that there is sufficient evidence in the case to sustain the jury's findings.

Defendant-appellant Fraser further complains of the admission of the testimony of Carl E. Wojan, an employee of the railroad, offered on behalf of said co-defendant, relating to the visibility in a westerly direction down the right-of-way from various points in Sixth street north of the crossing in question, and appellant characterizes this evidence as being evidence

of the result of tests or experiments, and contends that the testimony is incompetent unless essential conditions thereof are shown to be the same as at the time of the accident. We fail to see where the rights of said defendant were so prejudiced by this evidence that it should require a reversal as to plaintiff. It is apparent from an examination of the evidence given by said witness that an experiment in the true sense is not involved. Here there was no attempt to duplicate the conditions and re-enact the occurrence. All that is involved is a showing as to how the visibility down the right-of-way is affected by the permanent objects obstructing the view at various points. At the stations 25 to 200 feet north of the crossing, the obstruction to view to the west was the corner of the Englander Building. At 300 feet north of the crossing the obstruction to view was the feed store and Shell Garage. In other words, all the testimony amounted to was the point of intersection with the railroad track of a line drawn across the corner of the Englander Building from points 25 to 200 feet north of the crossing. It was still daylight when the police arrived at the scene after the occurrence and it was daylight when the witness Wojan made his measurements.

Witnesses have always been permitted to testify with respect to obstructions to view; for example, such things as hedges, fences, buildings and the like at intersections; for what distance the approaching driver had a clear view and what distance he could have seen down the intersecting street. The difference here is only that the evidence refers to a later date. Hence, proof was necessary to show (1) that only permanent objects or obstructions were involved and, (2) that there had been no change in the permanent objects—namely, the Englander Building—which would affect the visibility. This the court inquired into outside the presence of the jury, and found to be the fact before the proof was permitted. There were no obstruc-

356

tions in the form of movable objects at the time of the occurrence and the witness himself said that the picture—Railroad's Exhibit 1A—correctly portrayed the fixed objects. It seems clear that no error was committed by the court by the admission of this evidence offered by the co-defendant. Only fixed objects are involved and they are the same.

Two of the eight instructions given by the court on behalf of the plaintiff have been objected to by defendant Fraser. The court gave seventeen instructions for the defendant railroad company and fourteen instructions for the defendant-administrator Fraser, which included the two instructions heretofore referred to requiring the plaintiff to prove his case as set up in the Counts alleging wilful and wanton misconduct. One of the instructions given on behalf of the defendant Fraser, administrator, advised the jury that "these instructions are to be considered by you as one connected series. You must not pick out any one individual instruction and disregard others, but you must take all of the instructions together as the law." To try and treat each one of the instructions separately would unduly lengthen this opinion. We think, as a whole, taking all the instructions given, that the jury was properly instructed as to the law of the case.

As to the appeal by plaintiff from the judgment in favor of the railroad, the allowance of rebuttal evidence is a matter within the sound discretion of the trial judge. Washington Ice Co. v. Bradley, 171 Ill. 255, 259; Willard v. Petitt, 153 Ill. 663; McEniry v. Tri-City Ry. Co., 179 Ill. App. 152. From an examination of the evidence which appears in this case, we are of the opinion that the trial court did not abuse his discretion, either as to cross-examination, or as to the allowance of rebuttal evidence.

As to the instructions complained of by plaintiff-appellant, suffice it to say that the ultimate goal of a court is a fair and just result, Fraider v.

357

Hannah, 338 Ill. App. 440, 453. When it is clear that the case has been fairly tried and that the judgment is clearly right, the judgment should be affirmed by an Appellate Court. People v. Storer, 329 Ill. 536, 542; Sweney v. Northwestern Mut. Life Ins. Co., 251 Ill. App. 1, 31; Nelson v. Armistead, 327 Ill. App. 184. When the driver of an automobile is familiar with the crossing, and has an unobstructed view of the approaching train, and the crossing warning signals are properly operating, the driver's negligence or wilful and wanton conduct has been held in certain cases to be the sole proximate cause of injuries to a passenger in the automobile. Trust Co. of Chicago v. Baltimore & O. R. Co., 315 Ill. App. 209; Elliott v. Elgin, J. & E. Ry. Co., 325 Ill. App. 161. The jury here has reached a correct result, supported by the evidence, and Appellate Courts in such cases will not reverse such finding. Henert v. Chicago & N. W. Ry. Co., 332 Ill. App. 194, 200; Sweney v. Northwestern Mut. Life Ins. Co., supra. As said by our Supreme Court in People v. Storer, 329 Ill. 536, 542:

"The object of the review of judgments of trial courts by courts of appellate jurisdiction is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, in a trial in which no error has occurred which might be prejudicial to the defendant's rights."

The trial court properly entered judgment in favor of the railroad company on the verdict of the jury finding it not guilty.

It appearing to this court that the parties have had a fair trial, the judgments of the circuit court are therefore affirmed.

Judgments affirmed.

DOVE, P. J. and CROW, J., concur.