**Thomas C. Martin, a Minor, by Thomas E. Martin, His Father and Next Friend, Plaintiff-Appellee, v. Phil Cline, Defendant-Appellant.**

Term No. 57–M–3.

Fourth District.

October 24, 1957.

Released for publication November 12, 1957.

Craig & Craig (Glenn E. Moore, of Mt. Vernon, of counsel) for defendant-appellant.

William G. Ridgway, of Murphysboro, R. W. Harris, and David A. Warford, both of Marion, for plaintiff-appellee.

JUDGE SCHEINEMAN delivered the opinion of the court.

While visiting his grandfather's drug store, plaintiff, a child of 14 months, removed a bottle of sulphuric acid from a shelf, dropped it, and was burned severely. The jury, answering a special interrogatory, found the defendant grandfather guilty of wilful and wanton misconduct and returned a verdict in favor of plaintiff in the amount of $7,500, upon which judgment was en-

tered. Motions for directed verdict and for judgment notwithstanding the verdict were denied.

Defendant contends that as a matter of law he was not guilty of wilful and wanton misconduct and that the trial court erred in overruling its motions for directed verdict and for judgment notwithstanding the verdict.

On the day of the accident the child had come to the store in the company of his mother and aunt, both being daughters of the defendant. After having made the purchases for which they came, they accepted their father's invitation to have lunch with him in one of the booths in the store.

While eating plaintiff became restless and made it apparent that he wanted to get out onto the floor. His mother restrained his considerable squirming, but his grandfather urged her to let him down, assuring her that he "wouldn't hurt anything" and that he would be where "we can watch him."

The group then watched him from the booth as he approached another booth where two other children and their mothers were eating. Almost immediately thereafter plaintiff's mother lost sight of him, so she stood up in the booth and saw him in the prescription department of the store just as he was picking up a bottle.

She started to try to get out of the booth to get to him, telling her father that the child had a bottle. But defendant told her to sit down and finish eating, that he would pick him up and bring him back. The defendant then went over to the aisle of the prescription department where the child was and saw him walking with a bottle in his hand. As he called to him the boy dropped the bottle, breaking it, and then slipped and fell into the liquid.

The child screamed and defendant rushed to him. Already his clothing had started to "disintegrate" from

271

the action of the acid. First aid was administered and the child was taken to the hospital.

The store had the usual shelves along the side walls, also a row of show cases parallel to the wall with an aisle between them and the shelves. Toward the back of the store, the show cases changed to a work counter with a semi-partition about head high concealing the counter from the store. This was the prescription department, with an arched window in part of the partition, through which prescriptions were handled.

Along this partition on the inner side of the store, there was a row of five booths with tables and seats where food was served. Near the end of this row of booths was one of three openings permitting access to the prescription department behind the show cases and partition. The wall shelves continued on behind the partition, and acids were kept in that area on an open shelf about two feet above the floor. There was testimony that the area behind the prescription counter was not open to public use.

The defendant explained that the acids were not kept in a closed case because of the danger of accumulating fumes, and they were not on a high shelf because that would involve danger in reaching upward for the bottles.

The sole issue before this court is whether on the above facts it can be said as a matter of law that defendant was not guilty of wilful and wanton misconduct.

■ This court recognizes the principle that where there is any evidence in the record, construed most favorably to the plaintiff, which tends to prove the charge of wilful and wanton misconduct the question is properly within the province of the jury to decide. But as a corollary thereto where such evidence so considered does not tend to prove wilful and wanton misconduct a court should not hesitate to direct a verdict in favor of defendant. Robertson v. New York Cent.

272

R. Co., 388 Ill. 580; Trumbo v. Chicago B. & Q. R. Co., 389 Ill. 213; Bartolucci v. Falleti, 382 Ill. 168.

We believe that the facts in this case are such that the conduct of defendant cannot reasonably be said to come within the meaning of wilful and wanton misconduct.

■ It is, of course, difficult to lay down a general rule by which we may determine what type of conduct the law considers to be wilful and wanton misconduct. However, it may be stated generally that wilful and wanton misconduct is a more serious transgression than is negligence, and that an important distinction is in the mental attitude. Often negligence may consist of a mere inadvertence, or a momentary lapse from that degree of attentiveness required by due care. On the other hand, it is frequently said that a wanton act involves a *conscious indifference* to a known danger. It is based on the concept that, under the known or plainly observable circumstances, the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation, and ignored it.

■ Ill will is not a necessary element, that is, there need not be an intention to cause harm. But if one knows, or should know by reason of surrounding circumstances, that the safety of another is in peril as a result of what he does or does not do, and he intentionally ignores this fact and does not regulate his conduct in accordance with such knowledge then such a conscious indifference to consequences does constitute wilfulness. Trumbo v. Chicago B. & Q. R. Co., 389 Ill. 213; Bartolucci v. Falleti, 382 Ill. 168; Keretian v. Asadourian, 349 Ill. App. 390.

Plaintiff contends that defendant prevailed upon his daughter to allow the child to get out of the booth onto the floor, that he thereby assumed the duty of looking after the child, that he failed in that duty and

273

was guilty of wilful and wanton misconduct since he knew the location of the acid and knew or should have known that it was within reach of the child and dangerous to him.

In the first place, it is obvious that the defendant did not assume the sole responsibility of looking after the child. It is apparent he was merely exercising the prerogative of a grandfather in urging his daughter to give in to the wishes of his small grandson to be allowed the run of the floor. To back up his grandson's desires and efforts to escape the confinement of the booth, he merely assured his daughter that the boy "wouldn't hurt anything," that he would be "where we can watch him." Evidently it had not occurred to defendant that the child was in any danger. Nor did defendant thereby assume the sole responsibility of protecting the child from any and all eventualities, known and unknown. If he did, then all grandparents had better forego the privilege of attending and catering to their grandchildren.

It is true that if the defendant had not urged his daughter to allow the child to descend to the floor this accident may not have happened—that is, if the daughter herself could have continued to resist the squirming, restless efforts of her child to get down. But such is not the cause and effect contemplated by the legal doctrine of wilful and wanton misconduct.

It is the opinion of this court that there is a complete lack of any proof whatsoever of wilful and wanton misconduct on the part of defendant herein. This case was apparently tried on the theory that plaintiff was a social guest and licensee on the premises of defendant, and, in addition, plaintiff has stressed the fact that defendant was solely responsible for the child having been given the freedom of the floor. Giving full consideration to these contentions we cannot ascribe to defendant any act coming within

274

the meaning of wilfulness and wantonness as above set forth.

Defendant operated a drug store with a physical arrangement for merchandise and services not unlike most every other drug store of similar size. He segregated his prescription department from the rest of the store and kept therein his prescription stock, including the acids here in question and undoubtedly, other drugs of like dangerous potential. This department was not open to the public, though, of course, access thereto could be had. His explanation for placing the acids on a low shelf in the prescription department demonstrated foresight and reasonableness. He had no reason to expect that anyone other than he and his employees would enter or have any reason for being in the prescription department.

There is no reason to believe that when the child was placed on the floor the defendant should be charged with knowledge that an injury to the child would be a natural and probable result. Nor is there any foundation for the conclusion that defendant knew or should have known that the child was in peril or danger, nor that by failing to notice the momentary disappearance of the child a conscious indifference to consequences was exhibited.

This case has none of the attributes of wantonness and wilfulness and we therefore hold that the action of the trial court in refusing to direct a verdict in favor of defendant was error, and the judgment is reversed.

Reversed.

CULBERTSON, P. J. and BARDENS, J., concur.