John Biela, Plaintiff-Appellant, v. Joseph T. Messner, Defendant-Appellee.

Gen. No. 11,118.

Second District, First Division.
June 16, 1958.
Rehearing denied July 31, 1958.
Released for publication July 31, 1958.

 

James A. Dooley, of Chicago, for plaintiff-appellant.

Rathje & Woodward, of Wheaton (Alfred E. Woodward, of counsel) for defendant-appellee.

JUSTICE McNEAL delivered the opinion of the court.

Plaintiff brought this action to recover damages for personal injuries occasioned when he was walking along the edge of a road at night in the rain and was struck by an automobile driven by defendant. Plaintiff alleged that defendant operated his vehicle negligently and that he was guilty of wilful and wanton conduct. At the close of plaintiff's case the court directed a verdict for defendant on the wilful and wanton count. The jury returned a verdict finding defendant not guilty of negligence. Judgment was entered on the verdict and plaintiff appealed. Appellant's theory is that the trial court erred in directing a verdict on the wilful and wanton count, in instructing the jury, and in ruling on the admissibility of evidence.

Plaintiff was walking north on or along a road known as Fairview Avenue in an unincorporated area of DuPage County about 6:45 P. M., on Sunday, October 10, 1954, when he was struck by a car driven north on the road by the defendant. The accident occurred about one-fourth mile north of the intersection of Fairview and Ogden Avenues in Downers Grove. North of Ogden to the place of the accident, Fairview was a blacktop road 18 to 20 feet in width with no marked center line. On each side of the blacktop there were shoulders 5 to 6 feet wide, including strips of gravel about 18 inches wide adjacent to the blacktop.

There were four homes along the west side of Fairview, none along the east side, no sidewalks, and no street lights.

Plaintiff was 66 years of age and had been employed as a carpenter by the Pennsylvania Railroad about 34 years. He traveled by train from his work to Downers Grove, and was walking toward his home about a block north of the point where he was struck. He testified that after he crossed Ogden he walked on the shoulder on the east side of Fairview; he didn't know if he went onto the asphalt where there was water along the road; after he crossed the water he walked on the shoulder; he didn't see or hear any automobiles that night; and he remembers nothing after he was walking along the shoulder of the road.

Defendant lived about a block north and a block west of plaintiff's home. It had rained in the area for several days. Defendant was returning to his home after helping his brother pump water out of his basement about a mile from defendant's home. After turning off from Ogden Avenue, defendant drove his 1952 Mercury north on Fairview. About 150 feet north of Ogden, Fairview Avenue was covered with 3 or 4 inches of water for a distance of 150 to 200 feet. Defendant drove his car 3 to 5 miles an hour through the water, and then resumed a speed of 20 to 25 miles an hour. It was raining hard. His windshield wipers were operating and his lights were on bright, but the visibility was not good.

Defendant testified that a vehicle with bright lights was approaching from the opposite direction. When they were about a block apart, defendant dimmed his lights but the lights on the approaching vehicle continued on bright. Other than the approaching car with glaring bright lights, defendant saw nothing on the highway ahead. He maintained the same speed and kept his car in the middle of the northbound lane.

239

When the other car passed, defendant saw a man walking on the road about five feet ahead of him. He jammed on his brakes and turned to the left as much as he could, but plaintiff was hit. The rim of the right headlight on defendant's car was bent. After the impact his auto went about sixteen feet and stopped with the front end of the car in the left-hand lane.

Plaintiff was lying by defendant's right rear wheel, with his head on the blacktop and the rest of his body off on an angle on the shoulder of the road. He was wearing a dark suit. He sustained an inch and a half laceration on his right forehead, a right frontal bone fracture, and a concussion. He remained in the hospital about nine days. At the time of the trial he was still suffering from loss of memory and Parkinsonism, and was unable to resume his employment.

Edward Siblik, who lived in the fourth house north of Ogden on the west side of Fairview, was standing on his front porch watching the rain. In the reflection of the lights of the approaching cars he saw a person walking north along Fairview Avenue, but he was unable to say whether plaintiff was walking on the asphalt or on the shoulder of the road. As the cars met, Siblik heard a thump or a thud. The northbound car was moving about 20 or 25 miles an hour and it came to a stop directly in front of Siblik's door. He testified that defendant "stopped as fast as he possibly could," about 20 feet from where plaintiff was lying on the gravel part of the roadway. The pavement and plaintiff's clothing were wet and looked black.

In Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 583, the Court said: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover

240

the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." A wanton act involves a conscious indifference to a known danger. It is based on the concept that, under the known or plainly observable circumstances, the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation and ignored it (Martin v. Cline, 15 Ill.App.2d 269, 273).

■■ In the instant case it is not contented that defendant intentionally injured plaintiff or had actual knowledge of any impending danger. Appellant suggests that defendant knew there were no sidewalks along Fairview Avenue and should have known that on a rainy night the only place where people could walk would be on or adjacent to the pavement. We think that defendant had a right to assume that any person walking upon and along the highway would keep on his left of the paved portion or on the left shoulder, and upon meeting a vehicle would step off to his left, as required by section 78 (a) of the Uniform Act Regulating Traffic on Highways (Par. 175, Ch. 95½, Ill. Rev. Stat. 1953). Considered in its aspect most favorable to plaintiff, the evidence tends to show that he was walking on the wrong side of the road, that defendant was driving his car on an improved highway in an unincorporated and sparsely populated area at a speed of 20 to 25 miles an hour, that he dimmed the lights on his car when he met a vehicle approaching from the opposite direction as required by statute, but the driver of the approaching vehicle failed to dim his lights, that defendant applied his brakes and swerved to the left the moment he saw plaintiff, and that defendant stopped his car as soon as he possibly could—within 16 to 20 feet. We have carefully examined all of the evidence as abstracted

241

and conclude that there is no evidence that defendant was aware or should have been aware of plaintiff's presence on the highway or that the failure to discover his presence on the highway was the result of defendant's recklessness or carelessness; that there is no evidence in the record that plaintiff's injuries were the result of defendant's wilful and wanton conduct; and that the trial court properly directed a verdict for defendant on the wilful and wanton count.

Appellant contends that the trial court erred in giving defendant's instructions 33 and 35. According to the abstract of the common law record, the court refused instructions 16, 17 and 18, and gave instructions 20 through 40, inclusive. Following a verbatim recital of instructions so numbered in the abstract appears a statement that "Instructions Nos. 20, 21, 25, 27, 28, 30, 31, 34, 36 and 39 were given at plaintiff's behest: the remainder at defendant's behest." The only mention of instructions in the abstract of the report of proceedings is that plaintiff tendered and the court gave "plaintiff's instructions 1 to 8, inclusive, and 10 and 11," and that defendant tendered and the court gave "defendant's instructions 1, 2, 3, 4, 5, 7, 8, 10, 13, 16, 18 and 19; and refused 9, 14 and 15." Thus the court gave 22 instructions numbered 1 to 19, while according to the abstract of the common law record, only 21 instructions numbered 20 through 40 were given.

We have examined the record and report of proceedings and find that appellant's statement that certain instructions were given at plaintiff's behest and the remainder at defendant's behest is not justified by the record. Apparently the numbers assigned to instructions set forth in the abstract of the common law record are merely the numbers of the photostatic sheets in the record upon which the original instructions filed with the clerk were reproduced. Numbered

242

copies of instructions with indications as to who tendered them are not incorporated in the record or report of proceedings, as required by section 67 of the Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110, § 67]. The record and abstract also fail to show that the trial court held a conference with counsel to settle the instructions as required by section 67. It is impossible to ascertain from the record or report of proceedings filed in this case which party tendered any of the instructions given in the case. In this state of the record objections to instructions cannot be considered. City of Chicago v. Callender, 396 Ill. 371, 381; Gorgan v. Graeber, 335 Ill. App. 503.

On cross-examination plaintiff was asked several questions concerning matters in his discovery deposition, to which he responded that he did not know or remember. Defendant's attorney called the reporter who took plaintiff's deposition, and portions of the deposition read by the reporter show that plaintiff stated that part of the time he walked on the blacktop and part of the time off, and that he did not know whether he was on the blacktop or on the gravel just before the accident occurred. On cross-examination of the reporter, plaintiff sought to introduce other portions of the deposition to show that there was only one place about 125 feet north of Ogden Avenue where the water was covering the pavement. The trial court sustained defendant's objections to this line of cross-examination.

 The purpose of introducing evidence of statements out of court inconsistent with or contradictory to evidence given upon a trial is to discredit the witness, and such inconsistent or contradictory statements are never evidence of the fact. Such evidence cannot be overcome or explained by proving that the witness at some other time made a statement consistent with his testimony. The only way to meet

evidence of a contradictory statement is to prove that the witness did not make it. Evidence of a previous statement consistent with the testimony of a witness is no more competent as evidence of the fact than the contradictory statement. For these reasons proof of the declarations of a witness out of court in corroboration of testimony given by him on the trial of the case is, as a general rule, inadmissible, even after he has been impeached or discredited. Chicago City Ry. Co. v. Matthieson, 212 Ill. 292, 296; Eizerman v. Behn, 9 Ill.App.2d 263, 284. The additional portions of plaintiff's deposition sought to be introduced on cross-examination of the reporter in the instant case raised an inference that plaintiff walked on the pavement only at a point far south of the place where the accident occurred and were merely corroborative of plaintiff's position on the trial that he was walking on the gravel adjacent to the blacktop when he was struck. The trial court properly excluded the additional portions of plaintiff's deposition.

For the reasons stated, we find that the judgment of the Circuit Court of DuPage County should be and the same is hereby affirmed.

Judgment affirmed.

DOVE, P. J. and SPIVEY, J., concur.