Larry Lessen, By His Father and Next Friend, William Lessen, Plaintiff-Appellee, v. LeRoy Allison, Individually, et al., Defendants. Ted Allison, Defendant-Appellant.

Gen. No. 10,276.

Third District.

April 25, 1960.

Rehearing denied May 25, 1960.

Gillespie, Burke, and Gillespie, and Giffin, Winning, Lindner, and Newkirk, all of Springfield (Frederick H. Stone and Alfred F. Newkirk, of counsel) for appellant.

Kevin D. Kelly, of LaSalle, and Maurice W. Kepner, of Springfield, for appellee.

JUDGE ROETH delivered the opinion of the court.

Plaintiff Larry Lessen, by his next of friend, brought suit against Ted Allison, defendant, to recover damages for personal injuries sustained when an automobile in which he was riding as a guest overturned. Ted Allison was operating the automobile at the time of the occurrence. A jury found defendant guilty and assessed damages at $14,060.15. A post trial motion seeking only the entry of judgment notwithstanding the verdict was denied and judgment was entered on the jury's verdict. This appeal is limited to the single question of whether or not plaintiff was guilty of wilful and wanton misconduct as a matter of law. It is not contended that defendant was not guilty of wilful and wanton misconduct or that this question was not a question of fact for the jury.

█ Certain fundamental rules govern our determination of the question thus presented. We are precluded from weighing the evidence or undertaking to reconcile any conflict in the evidence. We must consider all the evidence in the aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom. If, when so considered, there is any evidence, standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom, which fairly tends to support the jury verdict, the entry of judgment notwithstanding the verdict is properly denied. We are therefore

required to examine the evidence keeping in mind the foregoing rules. Counsel for defendant call our attention to various conflicts in the testimony, but with these we are not concerned. We consider the testimony only in its aspect most favorable to plaintiff.

On the evening of August 5, 1956, six boys in the 16–17 year age bracket, drove from Lincoln, Illinois, to Springfield, Illinois, in a Plymouth station wagon. Ted Allison was driving, a boy by the name of Trent Hiatt was seated to his right in the front seat, the plaintiff was seated to the right of Trent Hiatt also in the front seat and the other three boys were seated in the rear seat. They drove around Springfield and finally came onto Jefferson Street, a one-way street for west bound traffic. The station wagon was equipped with a manual gear shift lever, and during the ride around Springfield Trent Hiatt had been explaining to defendant the art of speed shifting ordinarily used in drag racing. A drag race is a race of short duration to determine which car has the fastest acceleration. A drag race is not over a prescribed distance but is a series of races of short duration each and is concluded when one car is ahead of the other. By proper manipulation of the gear shift lever in conjunction with the clutch and gas feed, the shift from first to second to third speed can be made without losing any forward speed. Prior to the evening in question defendant had never participated in drag racing.

While on Jefferson Street the Plymouth stopped at a stop light and a Studebaker automobile pulled along side. From there on for two or three stop lights the two cars engaged in a drag race. As the cars were subsequently stopped for a stop light, Trent Hiatt asked the driver of the Studebaker whether he wanted to drag race and upon receiving an affirmative reply said, "Follow me." The two cars then proceeded west out of Springfield to the junction of Route 125 and

Route 97 leading to New Salem State Park. The intersection of these two state highways is a Y intersection. The two cars arrived at the intersection at about the same time and without stopping turned around, headed east toward Springfield, lined up on the highway going at a slow speed with the Plymouth in the east bound lane and the Studebaker in the west bound lane. On the count of three the cars took off. At first the Plymouth was ahead but finally the Studebaker pulled ahead and continued on down the highway in the direction of Springfield.

The distance from the Y intersection to the place where the automobile overturned is 4½ miles. East from the Y, the highway is level for about a block and then there is a gradual hill upgrade for about 2 blocks. As one proceeds on east toward Springfield from the top of this hill, one goes through the town of Bradfordton and a grain elevator is located on the south side of the highway. From the grain elevator to the place where the occurrence happened is a distance of $\frac{7}{10}$ of a mile. Just before reaching the point where the automobile overturned, the highway, as one proceeds east, hooks a little to the right.

As heretofore noted, the Plymouth was ahead at the start of the race. The Studebaker passed it within ½ mile of the point of starting and continued to pull away from the Plymouth in the direction of Springfield. As the Plymouth continued down the highway it continued to pick up speed. It was finally being driven at a speed of 103 miles per hour according to the testimony of Claude Hurley, one of the back seat occupants, who said he looked at the speedometer. Somewhere in the vicinity of Bradfordton it became apparent to the occupants of the Plymouth that the race was lost and that the Studebaker was not slowing down to renew the drag race. Several occupants of the

Plymouth commented that the race was over and they didn't have a chance or that they might as well slow down. The plaintiff testified that when the Plymouth was within 4 blocks of reaching the elevator at Bradfordton he told the defendant to slow down. However, the witness Claude Hurley testified that at no time did he have any sensation of a slowing of speed but rather that there was a continued level speed. Viewing this testimony most favorable to the plaintiff we must conclude that despite the admonitions of the plaintiff and other occupants of the car, and *despite the fact that the drag race had ended,* the defendant continued to drive at 103 miles per hour.

At the point east of Bradfordton where the highway hooks to the right, the Plymouth left the right hand lane of travel and proceeded in the left hand lane leaving skid marks on the pavement a distance of 260 feet from the center line, where it left the pavement on the north side travelling an additional 171 feet, leaving skid marks on the shoulder, where it overturned. From the foregoing it is a reasonable inference that defendant, travelling at a speed of 103 miles per hour, failed to successfully negotiate the hook in the highway, lost control of the automobile and overturned.

Counsel for defendant, in support of their contention that plaintiff was guilty of contributory, wilful and wanton misconduct as a matter of law, cite and rely upon three Illinois cases, i. e., Willgeroth v. Maddox, 281 Ill. App. 480; Lane v. Bobis, 340 Ill. App. 10, 91 N.E.2d 106, and Valentine v. England, 6 Ill.App.2d 275, 127 N.E.2d 473. The Willgeroth v. Maddox case, supra, is a guest case arising out of a collision between a train and the car in which plaintiff was riding and being driven by the defendant. In that case neither the driver nor the passenger looked in the direction

of the approaching train. Under such a factual situation it is obvious that if the driver of the automobile was guilty of wilful and wanton misconduct in failing to look, the passenger was guilty of the same misconduct. In Lane v. Bobis, supra, the plaintiff and defendant each owned a hunting dog which they were taking to a field trial. The dogs, strange to each other, were placed in the back seat of the car. The dogs started a disturbance and both the driver and passenger turned around and reached to quiet the dogs. Defendant lost control of the car. The wilful and wanton misconduct charged on the part of defendant consisted of placing two strange dogs together in the back seat, knowing of the tendency of such dogs to create a disturbance. Here again, if defendant was guilty of wilful and wanton misconduct in this regard the plaintiff was guilty of the same misconduct. The case of Valentine v. England, supra, has been aptly commented on in Zank v. Chicago, R. I. & P. R. Co., 17 Ill.2d 473, 161 N.E.2d 848. Counsel for defendant seek to apply these cases to the case at bar upon the theory that if it was wilful and wanton misconduct on the part of the driver to engage in drag racing, plaintiff was guilty of the same misconduct in being a willing party to the same. This theory overlooks the fact that the drag racing had been concluded prior to the time the occurrence happened. The driver was not engaged in any drag racing at the time the automobile skidded, left the highway and overturned. It also overlooks the fact that the wilful and wanton misconduct charged in the complaint against the driver is not that he, the driver, engaged in drag racing, but on the contrary that he, the driver, drove the automobile in a reckless manner at a speed in excess of 100 miles per hour without keeping a proper lookout for curves in the highway ahead and failed to keep his automobile under proper control. While there might be some

justification for the assertion that plaintiff was a willing participant in the drag racing in the first instance, it cannot be said that he was a willing participant to the reckless and venturesome course of conduct of the defendant in continuing to operate the automobile at 103 miles per hour over the protest of the plaintiff and others in the automobile after the drag racing had ended.

Counsel for defendant cite Bugh v. Webb (Ark.), 328 S.W.2d 379, as being controlling in this case. In Bugh v. Webb, supra, the driver and guest were thoroughly familiar with drag racing. They had raced each other in the past and had ridden together while drag racing. The highway on which they were drag racing was heavily travelled, a fact known to both the driver and passenger. *They were engaged in a drag race with another car* when they collided with the rear of a third car. Aside from the fact that the courts of Arkansas recognize and apply the assumption of risk doctrine to automobile negligence cases and the case was decided on this principle, it is apparent that the factual situation is entirely different from the case at bar.

■ In an action by a guest against the driver of an automobile, the driver is liable if guilty of wilful and wanton misconduct toward his guest. By the same token the guest may not recover against the driver if the guest is guilty of contributory wilful and wanton misconduct. Thus the standard of conduct is the same for the guest as for the driver. But the conduct required of the guest will not ordinarily, if in any case, be the same as that required of a driver because their circumstances are different. Zank v. Chicago, R. I. & P. R. Co., supra. The more recent cases of the Supreme Court of this state indicate that it is the exceptional case wherein it can be said that the question of wilful and wanton misconduct on the part of the driver

401

or contributory wilful and wanton misconduct on the part of the guest is not a question of fact for the jury.

We have carefully examined the record in this case and are of the opinion that the question of plaintiff's contributory wilful and wanton misconduct was a question of fact for the jury. The trial court did not err in denying the post trial motion for judgment notwithstanding the verdict. Accordingly the judgment of the Circuit Court of Sangamon County will be affirmed.

Affirmed.

REYNOLDS, P. J. and CARROLL, J., concur.