Robert Fosdick, a Minor, by Kenneth Fosdick, His Father and Next Friend, Plaintiff-Appellee, v. Joyce Servis, a Minor, Defendant-Appellant.

**Gen. No. 11,686.**

Second District, First Division.

April 10, 1963.

Costigan & Wollrab, of Bloomington, for appellant.

Chester Thomson, of Bloomington (Loren Thomson, of counsel), for appellee.

McNEAL, P. J.
Robert Fosdick brought this action to recover damages for injuries sustained while riding as a guest in

an automobile driven by the defendant, Joyce Servis. Judgment was entered on a verdict for $3000. Defendant's post-trial motion for judgment n. o. v. and for renewal of her motion for a directed verdict at the close of all the evidence was denied, and this appeal followed.

█ Appellant contends that the verdict of the jury and the judgment thereon was against the manifest weight of the evidence. In deciding this point we are required to review the record and to determine whether there is any evidence, which, taken with all intendments most favorable to plaintiff, tends to prove wilful and wanton misconduct on the part of the defendant.

The record shows that plaintiff and defendant were the only witnesses to the occurrence. On March 12, 1961, about 11:00 p. m., Joyce Servis, 16 years of age, drove her father's 1954 Ford north on U. S. Route 51 from its intersection with Route 24 a distance of about a block to its intersection with Front Street in El Paso. She turned the car east on Front Street and drove it 100 to 125 feet east from Route 51 where the car ran over a five or six-inch curbing and collided with a power pole which was about six inches from the south curb. As a result of the collision, Robert Fosdick, 19, who was riding on the right front seat, lost four teeth and needed fifty stitches to repair the lacerations on his face and head.

Joyce Servis was called as a plaintiff's witness under CPA 60 and testified that the car was in good mechanical condition and that her health was reasonably good. She had driven the car about five months. Prior to the accident the headlights on the car were lit, and the windshield wipers were operating because of a light rain. The car was traveling 15 to 20 miles an hour, and before she went over four railroad tracks which crossed Route 51, she put the brake on gradually. As she turned the corner onto Front Street, her

speed was between 10 and 15 miles an hour. Asked when she took her foot off the brake, Joyce replied, "Well, after I started to turn the corner—I had my turning signal on and my foot on the brake, and after that I don't remember. . . . I had it on until after I turned the corner. . . . I don't remember ever taking my foot off the brake." She said that she had a sharp pain in her right side just as she was turning the corner, that the last thing she remembers was starting to turn the corner, that she didn't know she hit anything, and that in her own mind she felt that she just blacked out. As a witness in her own behalf, she said that her first recollection after the accident was of Fosdick taking her out of the wreck, that she had blacked out before but not in a car, and that her last blackout was caused by illness and occurred a year or two before the accident.

Robert Fosdick testified that he and Joyce had stopped at a Mobil gas station at the intersection of Routes 24 and 51, that it was not raining at the time of the accident, but had rained earlier, that Joyce slowed down for the railroad tracks, that she made a wide turn as a lot of people do at the corner, and that she turned onto Front Street at 20 or 25 miles an hour. There were no cars approaching or parked on either side of Front Street east of the highway. At the turn Fosdick saw his buddy's car parked in the Cities Service lot on the left-hand side at the northeast corner of the intersection. As he turned around to look out the left rear door window at that car, he noticed that Joyce was sitting erect, her head wasn't slumped over, she had a hold of the steering wheel, and the car was headed down Front Street. His attention was directed at his buddy's car from the time he went around the corner until the collision. He said, "I wonder where Jerry is," then he heard Joyce scream, and he pulled his face back out of the window. His

head was thrown through the window on the right side when the car hit the light pole. He pulled his face away from the windshield and got out of the car. Joyce was sitting in the front seat screaming. He went around the car and got her out. She said she couldn't walk, so he carried her across the street. He went back about a block and a half to the service station and called the doctor. On cross-examination Fosdick testified that he didn't know how the accident happened, that Joyce did nothing in turning the corner that caused him to be alarmed, and that the only thing he observed that was in any way dangerous was going in the other lane of traffic as she turned the corner, and that "didn't bother" him.

██ Each case depends upon its own peculiar facts, and the question whether a personal injury has been inflicted as a result of wilful and wanton misconduct is ordinarily a question of fact to be determined by the jury if there is evidence in the record to support it. If there is not sufficient evidence to sustain a charge of wilful and wanton misconduct, it is the trial court's duty to withdraw that charge from the jury's consideration. Ficht v. Neidert Motor Service, Inc., 34 Ill App2d 360, 366, 181 NE2d 386.

██ Wilful and wanton misconduct is defined as an intentional act or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. Hering v. Hilton, 12 Ill2d 559, 562, 147 NE2d 311. A wanton act involves a conscious indifference to a known danger. It is based on the concept that under the known or plainly observable circumstances the doing or failing to do something will naturally and

probably result in injury to another, and the defendant must have been aware of that situation and ignored it. Martin v. Cline, 15 Ill App2d 269, 273, 145 NE2d 505, app den 15 Ill App2d viii; Biela v. Messner, 18 Ill App2d 236, 241, 151 NE2d 406, app dism 20 Ill App 2d vi. In the instant case the trial court instructed the jury without objection by either party that "wilful and wanton conduct" means a course of action which, if not intentional, shows an utter indifference to or *conscious* disregard for a person's own safety and the safety of others. IPI No 14.01.

Appellee contends that it was wilful and wanton conduct for defendant to drive an automobile when she knew that she was subject to blacking out spells and to abdominal pains which impaired her function as a driver. This theory of liability is not available to plaintiff under his complaint. The only wilful and wanton acts specified in the complaint are that defendant failed to have her vehicle under control and that she failed to keep a proper lookout to prevent striking the power pole. Counsel also contends that defendant failed "to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care," as defined in Hering v. Hilton. In support of this contention counsel suggests that the evidence shows that defendant turned the corner wide at 20 to 25 miles an hour, that as plaintiff looked out the left rear window of the car he saw defendant sitting upright with her head straight ahead and holding onto the wheel, and that therefore there is no logical explanation for her striking the pole unless she failed to discover its presence through recklessness or carelessness.

In determining whether there is any evidence in the record tending to show that defendant's conduct was wilful and wanton, conflicts in the evidence, its weight or preponderance, or the credibility of witness-

es may not be considered, but we must take that evidence as true which is most favorable to plaintiff's cause of action. So taken and considered, there is no indication that excessive speed caused defendant to lose control of the vehicle or that its speed was unreasonable. Plaintiff conceded that defendant slowed down for the railroad tracks. He made no complaint concerning defendant's speed or her manner of making the turn. He noticed nothing unusual when they turned the corner,—nothing dangerous except going in the other lane of traffic, and according to his testimony "a lot of people do that," and that didn't bother him. From the corner to the collision, plaintiff was looking out the left rear door window to see where Jerry was, so he was unable to say how the car happened to run into the power pole. Defendant remembers nothing after turning the corner, so her testimony affords no explanation of the accident other than her feeling that she blacked out.

In Pritchett v. Rich, 14 Ill App2d 215, 144 NE2d 173, defendant was driving his car south on Route 51 about 55 miles an hour, when he came to a curve about a mile and a half north of Minonk. He didn't realize the curve was so close. He applied the brakes and tried to make the turn but couldn't make it. The car left the highway, went down a five foot embankment, and hit a tree, injuring Pritchett. As far as the guest-plaintiff could tell, Rich properly operated the car and had control at all times up to the time the car left the highway. The Circuit Court of Woodford County set aside a verdict and judgment for $15,-000, and entered judgment n. o. v. in favor of the defendant. This court affirmed the judgment and, following Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980, said that there was a conspicuous lack of proof of any consciousness on the part of the defendant that his conduct would naturally and probably result in injury

369

to anyone, and that there was no proof of any absence of care exhibiting a conscious or reckless indifference to consequences.

In Joiner v. Birch, 21 Ill App2d 249, 157 NE2d 676, defendant was driving his automobile at 40 to 50 miles an hour over a bridge, the car began to skid, and defendant for the first time realized that there was ice on the bridge. Defendant lost control of the car and it ran off the road and into a guardrail, causing the death of plaintiff's intestate. The trial court directed a verdict and entered judgment for defendant at the close of plaintiff's case. In affirming the judgment, the court said that there was no showing that defendant was aware of the icy condition of the bridge, or that he wilfully ignored such condition.

After careful consideration of the evidence with all intendments favorable to plaintiff, we conclude that there is no proof in this record tending to establish the wilful and wanton acts specified in the complaint, or showing any conscious or reckless indifference to consequences on the part of the defendant, or showing that she was, or should have been aware of any danger and wilfully ignored it; and therefore, that the trial court should have directed a verdict or entered judgment notwithstanding the verdict in favor of the defendant. This conclusion makes unnecessary any consideration of appellant's further contention that the trial court erred in giving plaintiff's IPI instruction 30.01, including 30.06, over the objection that there was no allegation or proof of expense for medical services in the future. The judgment of the Circuit Court of Woodford County is reversed, and judgment in favor of defendant that plaintiff take nothing by his suit is entered here.

Reversed, and judgment here.

DOVE and SMITH, JJ., concur.