Rockingham,
No. 5158.

RONALD A. GRISWOLD *& a.*

*v.*

EDMUND F. RICHARDS, *Adm'r.*

Argued December 3, 1963.
Decided December 30, 1963.

*Russell H. McGuirk* and *Robert Shaw* (*Mr. McGuirk* orally), for the plaintiffs.

*Burns, Bryant & Hinchey* and *Paul V. Kenneally* (*Mr. Kenneally* orally), for the defendant.

DUNCAN, J.   The events preceding this fatal accident arose when the plaintiffs, the decedent, and other high school students were assembling in the yard of the Newmarket high school on the evening of September 29, 1959, prior to a play rehearsal. Following discussion of the speed which an automobile being operated by the decedent was capable of attaining, the parties, accompanied by other schoolmates in other cars, moved to a comparatively straight and level section of highway known as "the plains" to test the maximum acceleration of which the automobile driven by the decedent was capable.   According to the evidence of the plaintiffs, who entered the car at the high school, they proceeded at a reasonable speed to the plains, and it was then determined that following headlight signal to other vehicles stationed at the opposite end of the plains, the decedent's car would be timed as it proceeded from a stationary position to achieve the highest speed attainable on reaching the point where the other cars were stationed.

According to the three minor plaintiffs who were passengers, the decedent made one "run" in a westerly direction attaining a speed estimated at some seventy miles an hour. He then turned around at the Ash Swamp Road at the foot of a hill beyond the end of the plain.   Contrary to the expectation of the passengers, after turning he did not stop opposite the other cars on the plains, but continued by so that they surmised that he intended to make a second "run." However he failed to turn again at the easterly end of the plains where he was traveling at a high rate of speed.   As he passed the point where the first run had been started, one of the plaintiffs on the front seat "hollered for him to slow down . . . before we had an accident,"

but "he just kept right on going." He continued east toward the high school at a high speed, into and around a curve to the right. As he did so the plaintiff in the rear seat "got on the floor . . . because [he] was scared." The automobile left the highway, caromed off from one or possibly two trees on the left of the traveled way, crossed the highway, and came to rest against a tree on the righthand side of the way.

At the trial the negligence of the decedent was conceded, and the sole defense was contributory negligence on the part of the three plaintiff passengers. In furtherance of their position at the trial, the plaintiffs' tenth request sought instructions to the jury that the decedent "as the driver was in sole control or charge of the car and that the plaintiffs had no right to control the car." They also requested that the following instruction be given: "9. If you find that the [decedent] independently raced back toward the school from Ash Swamp Road after the test run on the plains and that this was not prearranged with the plaintiffs, then you cannot find that the plaintiffs voluntarily encountered a known danger and your verdict must be for the plaintiffs."

In instructing the jury the Trial Court adequately defined the standard of care applicable to the conduct of the plaintiffs, who were all minors seventeen years of age. *Shimkus* v. *Caesar*, 95 N. H. 286; see *Chalmers* v. *Harris Motors*, 104 N. H. 111, 113.

The only reference in the charge to the position relied upon by the plaintiffs to establish their freedom from contributory negligence followed discussion of the issue of whether if contributory negligence were found, it caused or contributed to cause the injuries. The instructions then proceeded as follows: "That is, the defendants here claim that the plaintiffs encountered a known danger in accepting these rides, or in riding in the Beaudet car, that it was a known danger that a reasonable, prudent person would not have encountered, and that in getting in the car and remaining in the car and their conduct in the car was a known danger that a reasonable, prudent person would not have encountered. The plaintiffs deny it. The plaintiffs say that even if they did encounter a known danger, that this known danger they encountered was not the cause of the injuries. They say there was an unknown danger they encountered there, and that they were not at fault. So you will bear in mind that you will consider the evidence, decide what hap-

pened, decide the issue as to whether or not there was contributory negligence on the part of the plaintiffs, and if there was contributory negligence which caused or contributed to cause the injuries to the plaintiffs in any degree, then your verdicts would be for the defendants. If there was no contributory negligence — I mean if there was no negligence which caused or contributed to cause injury to the plaintiffs, then your verdicts would be for the plaintiffs."

The established law of this jurisdiction, as in other jurisdictions, is that "the conduct which reasonable care requires of . . . a passenger will not ordinarily, if in any case, be the same as that which it would require of the driver. While the standard of duty is the same, the conduct required to fulfil that duty is ordinarily different because their circumstances are different." *Hoen* v. *Haines*, 85 N. H. 36, 39. "Fault in a passenger's acceptance of improper driving is not conclusively established unless the driver's fault or incompetence is so gross and extreme that effort to abate the danger, by inducing proper driving or by leaving the car if it may be done in safety, is unquestionably demanded." *Woodman* v. *Peck*, 90 N. H. 292, 297. "The duty to remonstrate is not, however, an absolute one but depends upon the circumstances of the particular case" (*Ramsdell* v. *Company*, 86 N. H. 457, 460), and a "multitude of counsel" may only "make the situation worse." *Noel* v. *Lapointe*, 86 N. H. 162, 165. See *McAllister* v. *Maltais*, 102 N. H. 245, 249-251. See also, 4 Blashfield, Cyclopedia of Automobile Law and Practice, ss. 2431, 2452; Annot. 84 A.L.R. 2d 448; *Bybee* v. *Shanks*, (Ky. App.) 253 S. W. 2d 257.

These principles received implicit recognition when the cases were allowed to go to the jury. It was properly a question of fact for the jury whether the minor plaintiffs, who had no control over the operation of the car and no right to such control, could or should have taken saving action for their own protection and negligently failed to do so, assuming that they did not consent to, or voluntarily encounter the risk of, operation of the car at an excessive speed between the plains and the high school, after the expected run on the plains had been completed. See *Emerson* v. *Bailey*, 102 N. H. 360, 363; *Bolduc* v. *Crain*, 104 N. H. 163.

We are of the opinion that the instructions given upon this primary issue of whether the plaintiffs voluntarily encountered

the risk of excessive speed after the run was finished "were not so framed as to convey the proper thought to a jury with reasonable certainty." *West* v. *Railroad*, 81 N. H. 522, 532; *Hoen* v. *Haines*, 85 N. H. 36, 39, *supra*. The instructions placed the plaintiffs' position before the jury in somewhat obscure terms of causation: "The plaintiffs say . . . that this known danger they encountered was not the cause of the injuries. They say there was an unknown danger they encountered there and that they were not at fault." We may perhaps assume that arguments of counsel not before us made it plain to the jury that the "unknown danger" referred to by the Court was the decedent's conduct in leaving the plains at high speed over a curving road where the plaintiffs had no reason to expect such operation. But if this assumption is made, still the instructions given failed to tell the jury what significance to attach to the plaintiffs' evidence if it was believed. If the jury found that the plaintiffs did not consent to encountering this "unknown" danger, it was for the jury to determine whether they were causally negligent under those circumstances; and if not, to return a verdict in their favor. See *McAllister* v. *Maltais*, 102 N. H. 245, 249-251, *supra*. Nowhere did it clearly appear that the plaintiffs were entitled to verdicts . if the jury found they did not voluntarily encounter the danger of traveling at high speed from the plains to the school and that they exercised reasonable care after that danger arose.

In a somewhat parallel case it was pointed out, in sustaining a verdict for the plaintiff: "While there might be some justification for the assertion that plaintiff was a willing participant . . . in the first instance, it cannot be said that he was a willing participant to the reckless and venturesome course of conduct of the defendant in continuing to operate the automobile at 103 miles per hour over . . . protest . . . after the drag racing had ended." *Lessen* v. *Allison*, 25 Ill. App. 2d 395, 400-401.

The plaintiffs were fairly entitled to an instruction that in considering the plaintiffs' claim of freedom from fault, the jury should take into account the circumstances that the decedent and not the plaintiffs had control of the speeding vehicle, and that their duty as passengers was of a different order from that of the driver. *Hoen* v. *Haines, supra*. They were likewise entitled to instructions defining their rights and obligations if their evidence was believed; and in particular to instructions

clearly submitting for determination the question of whether the danger which the plaintiffs voluntarily encountered did or did not extend to danger which arose after completion of the test run on the plains, and specifying that if it did not, they were entitled to verdicts provided they exercised due care under the circumstances. *Perlman* v. *Haigh*, 90 N. H. 404; *Burgess* v. *Railroad*, 98 N. H. 372, 380, and cases cited.

While instructions in the exact phraseology employed by the ninth and tenth requests were not required the requests served to direct attention to issues upon which appropriate instructions should have been given. *Nickerson* v. *Bentley*, 89 N. H. 533. Accordingly the exceptions to the denial of the requests are sustained. Since a new trial will be required, other exceptions need not be considered.

*Exceptions sustained in part; new trial.*

All concurred.