LEROY DANDURAND, Admr. of the Estate of Richard Dandurand, Deceased, Plaintiff-Appellant, *v.* CHEBANSE RECREATION CENTER, Defendant-Appellee.

(No. 72-134;

Third District—November 29, 1972.

Edward Vogt, of Kankakee, for appellant.

James Garrison, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Kankakee County directing a jury verdict in favor of defendant Chebanse Recreation Center, a non-profit corporation on the complaint of the plaintiff Leroy Dandurand, as administrator of the estate of his son Richard Dandurand, deceased. The court entered judgment in favor of said defendant as against the plaintiff.

On July 4, 1969, Richard Dandurand, 19 years of age at the time, drowned at the premises of Chebanse Recreation Center. Chebanse Recreation Center, an Illinois not-for-profit corporation, was a private swim club operated by and for its members. The administrator of the estate of Richard Dandurand filed action against the defendant recreation center seeking, in one count, a recovery for wrongful death on the theory of negligence, and, in the second count, a recovery for wrongful death on the theory of willful and wanton misconduct of defendant.

It appears that Richard Dandurand and his fiance Debbie Crawford, went to the Chebanse Recreation Center on July 4, 1969. They were accompanied by Elizabeth Schroeder, who was a member of the club but neither Richard Dandurand nor his fiance Debbie Crawford were members of the club. The center was located on a lake. The facilities consisted of a shallow safety area in the lake, marked off by a so-called "sinker line." There was also a portion on the other side of the rope or sinker line designated as a swimming area which extended to an area in which a raft was located and from which swimmers dove into the water. The raft, which was anchored, was located approximately a city block from the safety area and was at the opposite end of the lake and approximately 12 to 15 feet from the closest shore.

The only access to the entire recreation area was through a narrow gate. As the decedent Richard Dandurand and his two companions entered through the gate, Elizabeth Schroeder showed her membership card to the hired attendant at the gate. The attendant did not ask Richard or Debbie any questions. Near the entrance, a plywood sign, measuring four feet by eight feet was located which bore the legend, "Members Only." The sign also contained further language as follows:

> "The lifeline designates the safety area and the purpose of it should be observed at all times. * * * All persons entering will assume their own liability. * * * No children under 12 or non-swimmers are allowed on the deep side."

It appears from the record that the club's sole operational expense was

the $150 monthly salary for the gate attendant. The organizers of the club specifically had designed the club to serve as a recreation area for persons who could not afford more expensive swim clubs in the area. As part of the effort to economize to follow such purpose, there were no lifeguards at the lake. Membership dues were $15 annually.

Richard Dandurand had told Debbie that he could not swim. Debbie had also told Richard Dandurand that the raft was in deep water. Richard Dandurand knew that there were no lifeguards at the premises. Elizabeth, Richard and Debbie first waded in the shallow safety area. Most of the other bathers were present in this area. Debbie and Elizabeth, who could both swim, swam to the raft and then returned to the safety area. Richard said that he also wanted to go to the raft. Elizabeth then swam to the raft, and Debbie and Richard walked along the shore to the area of the raft. As Debbie and Richard approached the area of the shore which was closest to the raft, Debbie told Richard she would hold his hand and be with him, because the water they would be required to cross to get to the raft was deep. Richard followed her into the water and as she approached the deeper water she released his hand and he disappeared. No warning signs were located in the area of the raft and there was no operating lifesaving equipment on the premises.

At the close of the evidence presented on behalf of appellant, the trial court directed a verdict in favor of appellee. Judgment was entered in favor of defendant. The judgment of the trial court would be required to be sustained as to the count charging negligence, if it would be proper to conclude that a verdict for plaintiff could not stand, on a finding that Richard Dandurand was contributorily negligent or a finding that appellee was not negligent. There was no evidence of willful and wanton conduct on part of defendant which could justify a recovery.

■■ In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, the Supreme Court of this State undertook a comprehensive analysis of the circumstance under which a verdict should be directed. Following an extensive review of precedents, the court stated that a directed verdict is appropriate if the evidence, viewed in its aspect most favorable to appellant, so overwhelmingly favored appellee, that no contrary verdict based on the evidence ever could stand.

■■ For the purposes of our consideration of this case, we first consider the duty of care which the Chebanse Recreation Center owed to Richard Dandurand. For this purpose we assume the most favorable interpretation of the evidence, that is, that Richard Dandurand was an invitee and that the Chebanse Recreation Center owed him the duty of exercising such care for the safety of his person and property that ordinarily prudent person in its position would have exercised. 28 I.L.P. Negligence, Sec. 51.

As we had indicated, the objective of the swim club was to conduct the operations as economically as possible. To attain that objective, the club did not employ lifeguards. The appellee warned the potential users of the facility of the existence of danger and directed that nonswimmers use the safety area. The warning was prominently displayed and was clearly expressed in its terms. The potential users were also warned about the deep water and the danger of going into the deep water.

■ The nature of the duty which was imposed upon appellee is summarized concisely in American Law Institute Restatement of the Law of Torts 2d, Sec. 343A (1), in the following language:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

By reason of the warning signs and the nature of the operation conducted by defendant, defendant could reasonably believe that the condition which in fact created the risk, would be known to persons such as Richard Dandurand, the decedent. The warning of the sign was adequate to enable a person in the position of Richard Dandurand to avoid precisely the danger of drowning by reason of entering water which was deep. On the basis of the record, it is apparent that the decedent did not heed the warning. Since there was no dispute as to the facts in the case, the court could determine whether decedent's conduct disclosed that he exercised a degree of care for his own safety that an ordinary prudent person in his position would have exercised. He, in fact, owed the duty to avoid the risk reasonably to be perceived through entry into deep water by a man who is unable to swim.

■■■ Defendant was not an insurer of the safety of persons who came upon its premises, but it only had the duty to exercise reasonable care to prevent harm. In view of the nature of the operation of the club, with the emphasis on an economical operation, it had provided clear warning against the very danger which actually caused the death of the decedent. On the basis of the precedent of the *Pedrick* case we cannot find that the trial court acted improperly in directing a verdict in favor of defendant on the count charging negligence. Necessarily, also, since the evidence would fail to sustain a finding that defendant was negligent, it would certainly fail to sustain any finding that the defendant's conduct could be characterized as willful and wanton. *Martin v. Cline,* 15 Ill.App.2d 269, 145 N.E.2d 505, 507.

Because of the age of decedent and his apparent capacity to read and understand, precedents relating to the expanded duty which might be im-

posed upon a private swim club with respect to young children or persons under disability would not be applicable under the facts of this case. Although normally questions of contributory negligence and negligence would be questions of fact for a jury determination, on the basis of a review of the record we believe that the action of the trial court in directing the verdict of not guilty was proper. It is clear from the record that, although he could not swim, decedent was attempting to reach the raft that he had been told was in deep water. He had passed in close proximity to the warning sign which directed that nonswimmers should remain in the shallow portion behind the sinker or rope line. Decedent was 19 years of age and, according to appellant's witnesses, was a normal young man. The record shows that he was aware that the water was deep in the area near the raft.

For the reasons stated, the judgment of the circuit court of Kankakee County will be affirmed.

Judgment affirmed.

DIXON and SCOTT, JJ., concur.